IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAREN REED, et al.                    :

                                      :

    v.                                :   Civil Action No. DKC 2008-2032

                                      :

RIVER ROAD SURGICAL CENTER,
LLC, et al.              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this medical malpractice action is a motion for leave to file second amended complaint (Paper 36) filed by Plaintiffs Karen Reed, Malcom Reed, Gardiner Reed, William Reed, Emerson Reed, Edward Reed, and Patricia Reed.[1]  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Plaintiffs' motion will be granted.

**I.   Background**

On October 4, 2007, Robert Reed went to the River Road Surgical Center ("RRSC") to undergo an outpatient surgical procedure to alleviate his snoring.  During the surgery, Mr. Reed suffered cardiac arrest and anoxic encephalopathy, and died at Suburban Hospital on October 10, 2007.  Plaintiff Karen Reed, Mr. Reed's wife, along with her four minor children, filed this

---

[1]  Plaintiffs also filed a consent motion for disbursement of funds (Paper 53) and a joint motion for protective order.  (Paper 52).  Those motions will be resolved separately.

wrongful death and survival action against the following Defendants: (1) RRSC; (2) Dr. Seth Oringer; (3) Dr. Dai Ho Cho; (4) Dr. Mark Schutz; (5) Registered Nurse Lacey Meade; (6) RRSC employee Anne Djoum; and (7) MSH Anesthesia Associates, P.C. (Paper 1). Plaintiffs filed an amended complaint to add Mr. Reed's parents as Plaintiffs. (Paper 37). On January 8, 2009, Plaintiffs filed a motion for leave to file a second amended complaint to add a claim for punitive damages. (Paper 36).

Following private mediation, Plaintiffs entered a settlement agreement with five of the seven Defendants. The remaining Defendants, Mark Shutz, M.D. and MSH Anesthesiology Associates, P.C., oppose Plaintiffs' proposed second amended complaint requesting punitive damages.

## II.  Motion for Leave to File Second Amended Complaint

### A.  Standard of Review

As noted above, Plaintiffs filed a motion for leave to file a second amended complaint on January 8, 2009. (Paper 36). The original scheduling order stated that all motions for amendment of pleadings were due by November 3, 2008.[2] (Paper 14, at 2). Plaintiffs' motion triggers both Fed.R.Civ.P. 15(a) governing

---

[2] Discovery was originally scheduled to close on January 30, 2009. (Paper 14). The deadline was extended to March 31, 2009. (Paper 27). The deadline was extended a second time to April 30, 2009. (Paper 40).

amendment of pleadings, and Fed.R.Civ.P. 16(b) governing modification of a scheduling order.

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." Denial of leave to amend should occur "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Rule 15, thus, reflects "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)(*en banc*). Determinations of futility under Rule 15(a) are governed by the standard for motions to dismiss. *Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F.Supp.2d 451, 459 (D.Md. 2005).

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

Fed.R.Civ.P. 16(b) governs the modification of a scheduling order.  "[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."  *Nourison Rug Corp. v. Parvizian*, 545 F.3d 295, 298 (4th Cir. 2008).  The good cause inquiry primarily "focuses on the timeliness of the amendment and the reasons for its tardy submission" and in particular, on "the diligence of the movant."  *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D.Md. 2002).

**B.   Analysis**

Plaintiffs advance two reasons for seeking leave to file a second amended complaint: (1) to correct Plaintiff Karen Reed's name in the caption of the case; and (2) to add a claim for punitive damages in the survival action.  Defendants do not oppose Plaintiffs' request for leave to correct Karen Reed's name.  However, Defendants oppose Plaintiffs' request to add punitive

4

damages.  Specifically, Defendants argue that Plaintiffs' punitive damages allegations are insufficient to satisfy the actual malice standard.

Plaintiffs request to add punitive damages a claim for punitive damages for two reasons: (1) Defendants used unlabeled syringes, and (2) Defendants failed to train RRSC personnel on how to use of the cardiac defibrillator.  Plaintiffs do not challenge the assertion of Dr. Shutz and MSH Anesthesia Associates, P.C. that they are not surgical personnel and were not involved in the use of unlabeled syringes.  Indeed, Plaintiffs allege that "*surgical personnel* used syringes containing medications during surgery that were not labeled as to their contents."  (Paper 36, ¶ 23)(emphasis added).  Therefore, Plaintiffs claim for punitive damages will be limited to allegations related to the use of the defibrillator.

Under Maryland law, a plaintiff seeking punitive damages must prove "actual malice" on the part of the defendant, justifying an award of punitive damages based upon the "heinous nature of the defendant's tortious conduct . . . ."  *Owens-Illinois v. Zenobia*, 325 Md. 420, 454, 460 (1992).  "[P]unitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability."  *Id.* at 454.  "Maryland law has limited the availability of punitive damages to situations in which the

defendant's conduct is characterized by knowing and deliberate wrongdoing." *Darcars Motors of Silver Springs, Inc. v. Borzym*, 379 Md. 249, 265 (2004).  As explained in *Zenobia*:

> [I]n order for actual malice to be found . . . regardless of whether the cause of action for compensatory damages is based on negligence or strict liability, the plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect.
>
> The knowledge component, which we hold is necessary to support an award of punitive damages, does not mean "constructive knowledge" or "substantial knowledge" or "should have known."  More is required to expose a defendant to a potential punitive damages award.  The plaintiff must show that the defendant actually knew of the defect and of the danger of the product at the time the product left the defendant's possession or control.  *See Sch. Dist. of Independence v. U.S. Gypsum*, 750 S.W.2d 442, 446 (Mo.App. 1988)("No Missouri case has permitted submission of punitive damage claim in a strict products liability case on the theory that the defendant should have known of a dangerous defect in its product").

*Zenobia*, 325 Md. at 462 (internal footnotes omitted).

Here, Plaintiffs' proposed amendments are directly related to the knowledge requirement under the actual malice standard:

> Defendants knew for at least several months prior to Mr. Reed's surgery that . . . no one at the facility had been trained on or knew how to operate critical medical equipment such as the center's only cardiac defibrillator.  Defendants deliberately shut their eyes and avoided making reasonable inquiry with a conscious purpose to avoid learning the truth of the extreme risk . . . .  Defendants had

> actual knowledge of these unsafe and dangerous
> practices because they had been warned about
> and been urged to stop them at least several
> months before Mr. Reed's death.
>
> Defendants, armed with actual knowledge of the
> risks to Mr. Reed's life and safety,
> consciously disregarded the potential harm to
> Mr. Reed and other patients at the surgical
> center . . . . Defendants acted with actual
> malice because they consciously and
> deliberately failed to ensure the safety and
> well-being of Mr. Reed in the face of their
> actual knowledge of the dangers at the center.

(Paper 36, Ex. 1, Second Amended Compl. ¶¶ 23-24).

Plaintiffs' amendments are not clearly futile and are sufficient to state a claim under Fed.R.Civ.P. 12(b)(6). *See, e.g.*, *Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995)(denying motion for leave to amend where amendment "would be futile because the case would still fail to survive a motion to dismiss"). Plaintiffs have alleged sufficient facts to demonstrate Dr. Shutz was warned that training was necessary on how to use the defibrillator, but failed to take action. The complaint alleges that the cardiac defibrillator is critical medical equipment. These allegations are sufficient to state a claim for punitive damages.

In addition, Plaintiffs have shown good cause to justify filing a second amended complaint after the initial deadline for amending pleadings. Plaintiffs' punitive damages claim is based, in part, on the following testimony of Nurse Meade:

Q.    Did you ask Dr. Shutz any questions about the new defibrillator on the day you saw him handling the dials?

A.    I just made a statement.  I said, "Oh wow, this is our new one.  We need to be inservice."

Q.    What was his response?

A.    "You will be."

.  .  .

Q.    And that -- and your testimony is that for several months those surgeries went on at the River Road with a defibrillator that no one had been trained to use?

A.    Yes.

Q.    Did you ever bring that to Dr. Shutz's attention again?

A.    Yes.

.  .  .

Q.    What did you tell Dr. Shutz?

A.    "We need to be inserviced.  We still have not been inserviced."

Q.    And what did -- what was his response?

A.    "Yes, we do."

(Paper 47, Ex. 1, Meade Dep. 86:7-16, 87:2-12, 87:22-88:5).[3]

Plaintiffs did not have knowledge of the facts giving rise to their claim for punitive damages until Ms. Meade's deposition on November 10, 2008, *after* the initial November 3, 2008 deadline for

---

[3]   Defendants' objections have been omitted from the above-quoted portion of Nurse Meade's testimony.

amendment of pleadings.   Nurse Meade's testimony is directly related to Plaintiffs' claim that Defendants acted with actual malice.   Although the deadline for amendment of pleadings expired, Plaintiffs filed the motion for leave to file a second amended complaint prior to the initial discovery deadline (January 30, 2009), and well within the extended discovery deadlines (March 31, 2009 and April 30, 2009).   Additionally, there is no indication that Plaintiffs could have advanced a claim for punitive damages in an earlier complaint.   Although Defendants dispute the merits of Plaintiffs' allegations, a determination of the validity of Plaintiffs' request for punitive damages is inappropriate at this stage.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion will be granted. A separate Order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge